IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CR-10 |
| | ) | |
| IVAN LOPEZ, | ) | Honorable Leonie M. Brinkema |
| Defendant. | ) | |
| _____ | ) | Sentencing Hearing: July 27, 2022 |

SENTENCING POSITION

Ivan Lopez has overcome many obstacles, including a traumatic childhood, to find some stability in his life. Although he continues to struggle with both substance use and mental health disorders, he has a community-based treatment team, with whom he has been engaged with for nearly two years, ready to facilitate his continued rehabilitation. Here, continued detention is not warranted and a sentence of time-served serves the goals of sentencing.

I. *Despite a childhood marked by instability, loss, and abuse, Mr. Lopez has found stability in recent years.*

Born in Chicago to a mother with severe mental illness and a father addicted to crack cocaine, Mr. Lopez entered this world with few opportunities and a mass of obstacles.[1] His father, for whom he is named, was barely present in his life. He struggled with a crack addiction so severe that Mr. Lopez's memories of him are mostly of the times he stole from the family to buy drugs. Mr. Lopez's father died of a drug overdose when he

---

[1] The information in this section, that supplements the two pretrial services bond reports and the presentence report, comes from interviews with Mr. Lopez, and his younger brother and older sister, as well as interviews with Mr. Lopez's mentor David Rivel and members of Mr. Lopez's ACT team.

was 5 or 6 years old.

Mr. Lopez's mother suffered from severe mental health conditions. ████████

████████████████████████████████████████████████████████████████

████████████ His mother resisted medications and was often in an altered mental state. Although she had seven children (with seven different fathers), Mr. Lopez was raised only with his younger brother.  This is because Mr. Lopez's mother's constant delusions and paranoia—that people were chasing her or out to get her—kept her on the run. Eventually she left all of her children behind.

Mr. Lopez spent the first six or seven years of his life in Chicago. *See* Dkt. No. 91 at 7.  He lived with his mother and younger brother in motels and hotels, on the couches of extended family, on the streets, and in shelters.  Although Mr. Lopez's siblings and extended family lived in Chicago, his mother's illness and erratic behavior prevented Mr. Lopez from forming meaningful connections with them. Eventually Mr. Lopez's mother's delusions drove her to leave Chicago. She took Mr. Lopez and his little brother to Boston, leaving the rest of the family behind. Mr. Lopez, his brother, and his mother stayed in Boston for about a year. Then, their mother's persistent delusion that she was being chased caused her to move again, this time to New York City.

For more than the first decade of his life, Mr. Lopez lived with a woman whose illness disrupted any possibility of stability. He had no long-term housing and at times lived on the street. He switched schools often and missed more days of school that he can remember.  Sometimes he would have enough food to eat, other times his mother did not have the resources or ability to feed him.   At times, his mother was quite abusive.

Mr. Lopez lived in his mother's delusions. He was told not to trust people and to be on the lookout for the people chasing them.  When his mother fled, Mr. Lopez had to

leave all his possessions behind because his mother feared they had been bugged.  Mr. Lopez never felt like he owned anything, never felt like he had a real home or community.  In Mr. Lopez's own words, his childhood was "horrible."    Still, Mr. Lopez loved his mother—the only parent he had—and he missed her deeply when he was removed from her care.

When Mr. Lopez was around 12 years of age, New York social services intervened and took him, eventually permanently, from his mother's care. *See* Dkt. 91 at 9.  He became a ward of the state and was placed along with his brother in a foster family.  The family chose to adopt  his brother but not Mr. Lopez. After a couple of years with the foster family, Mr. Lopez spent the rest of his youth in group homes. *Id*. During this period Mr. Lopez lost contact with his mother.

Without family, in his early teens, Mr. Lopez, like his parents began to develop substance use and mental health struggles.  In his teens, Mr. Lopez, like his mother, began to show signs of mental health disorders. Dkt. 91 at 10. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███ However, unlike his mother, Mr. Lopez is not resistant to medication or treatment. *See* Dkt. No. 26 at 1. To the contrary, he seeks out the treatment that provides him with support and stability.  *Id*.

When Mr. Lopez aged out of the New York foster care system, he had almost no family support. His mother had relocated back to Chicago (she has since died of an apparent suicide just as Mr. Lopez was beginning to reconnect with her). *See* Dkt. No 91 at 11. He had lost contact with his extended family and all of his siblings but his younger brother.  Carrying the trauma of his childhood, Mr. Lopez now faced his own obstacles—

3

serious mental health and addiction problems. *See* Dkt. No. 9 at 3. In a vast city, with no safety net, Mr. Lopez could have fallen into a cycle of homelessness and incarceration. But he did not. He fought for and found stability. For many years, Mr. Lopez has maintained his own apartment with a housing voucher, and significantly, since 2020, he has been under the care of an assertive community treatment ("ACT") team. Dkt. No. 9 at 1; Dkt. No. 26 at 1-3.  At 26 years of age, Mr. Lopez continues to struggle, but he has already overcome so many obstacles and has the resources available to continue to make positive steps forward.

II.     *Mr. Lopez is connected to community-based services that will continue to address his substance use and mental health concerns.*

Since 2020 Mr. Lopez has been under an assisted outpatient treatment ("AOT") order and benefited from the services of the Westchester Medical Center ACT team. Dkt. No. 26 at 1. The ACT team includes a psychiatrist, a case manager, and a mental health therapist, and provides integrated treatment, along with case management, rehabilitation, and support services. *Id.*  Mr. Lopez receives his mental health medication and treatment from the ACT team. *Id.* The ACT team also coordinates substance use treatment. *Id.*

Mr. Lopez has at least 6 meetings per month with members of his ACT team and remains in continual contact with members of the ACT team (even through the most recent period of incarceration).  Dkt. No. 9 at 3; Dkt. No. 26 at 1.  The AOT order, a civil order, provides for court mandated treatment, and allows the ACT team to hospitalize Mr. Lopez, when necessary. Dkt. No. 26 at 1. ████████████████████████

4

███████████████████████████████████████████████████.[2]

Admittedly, with a long history of cocaine and marijuana use, Mr. Lopez has struggled to abstain from the use of drugs, even while under pretrial supervision. Dkt. No. 91 at 11. While not an excuse, it is important to note that Mr. Lopez suffers from multiple illnesses, including drug addiction. Per the American Medical Association and the American Society of Addiction Medicine, addiction is a chronic "progressive, relapsing disease[,]" requiring multiple treatment terms.[3] Like many diseases, addiction is a result of behavioral, environmental, and biological and genetic factors.[4] That Mr. Lopez suffers from this disease is not surprising, given his father's substance use.

Mr. Lopez, like many others, has struggled on and off with addiction for years. Addiction recovery is a long-term process, and like other chronic illness, relapse is common. Up to 60% of people who receive substance abuse treatment will relapse within a year.[5] Relapse does not indicate poor character, or a lack of desire to be substance free, rather, it is a characteristic of the disease. A report authored by the Surgeon General in 2016, explained, "[w]e must help everyone see that addiction is not a character flaw—it is a chronic illness that we must approach with the same skill and compassion with which

---

[2] █████████████████████████████████████████████████████████████████████████████████

[3] The National Center on Addiction and Substance Abuse, *available at*, https://www.centeronaddiction.org/what-addiction/addiction-disease
[4] *Id.*
[5] Anita Slomski, *Clinical Trials Update*, American Medical Association, Vol. 311 No. 24, June 25, 2014 (available at http://jamanetwork.com/journals/jama/article-abstract/1883017).

we approach heart disease, diabetes, and cancer."[6]

Mr. Lopez is in need in of continued treatment for his longstanding drug addiction and mental health concerns. Luckily, he already has a team in place to coordinate his treatment and to support him as he works to maintain sobriety and stability.

III.   *A sentence of time-served or a non-custodial sentence serves the goals of sentencing.*

On June 29, 2022, a jury convicted Mr. Lopez of simple assault in violation of 18 USC § 113(a)(5). Dkt. No. 83.   A class B misdemeanor, the statutory maximum sentence of incarceration is six months. 18 USC § 113(a)(5).  As the count of conviction is a class B misdemeanor, the guidelines do not apply. U.S.S.G. § 1B1.9.  By the date of sentencing Mr. Lopez will have already served approximately 4 months of incarceration.  *See* Dkt. No. 89 at 1.  The defense submits that a sentence of time-served, or a probationary sentence serves the goals of sentencing.

First,  although Mr. Lopez has prior arrests, this is the first time Mr. Lopez has served any significant time in custody.  The months-long period of incarceration will serve to deter Mr. Lopez in the future.  Adding any additional incarceration to Mr. Lopez's sentence is unlikely to achieve any greater deterrent effect.  As social science has indicated "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment."[7] Second, continued detention could have serious implications for Mr. Lopez's housing and his continued stability in the community.  Indeed, Mr. Lopez has a

---

[6] U.S. Dep't of Health and Human Services, *Facing Addiction in America: The Surgeon General's Report on Alcohol Drugs, and Health (2016),* https://addiction.surgeongeneral.gov/surgeon-generals-report.pdf.

[7] National Institute of Justice, Five Things About Deterrence (Sept. 2014) available at: https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

treatment team awaiting him.  To continue to seek stability in the community, Mr. Lopez needs to be engaged in lasting mental health and substance use treatment. His ACT team will facilitate this, and releasing Mr. Lopez to engage in this treatment serves the goals of sentencing.

For all of the above stated reasons, it is respectfully requested that the Court sentence Mr. Lopez to the time he has already served to be released by 9:00 a.m. on the morning of Thursday July 28, 2022, from the courthouse.[8]

Dated: July 26, 2022

IVAN LOPEZ
By counsel

 /s/ Lauren E. S. Rosen
Lauren E. S. Rosen
Admitted *Pro Hac Vice*
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

---

[8] Defense counsel will help facilitate Mr. Lopez's travel back home to New York. Releasing Mr. Lopez from the courthouse in the morning will allow the defense team to take Mr. Lopez to probation, if necessary, and ensure Mr. Lopez is able to travel back to New York.